### THE COOLGARDIE.

(Circuit Court of Appeals, Ninth Circuit. September 8, 1919.)

No. 3294.

SHIPPING ☞82—INJURY TO MEDICAL INSPECTOR CAUSED BY UNSAFE CONDITION OF DECK.

A ship held not chargeable with negligence for not providing a step between the deck and the top of a lumber pile 2 feet 9 inches above the deck, which rendered it liable for injury to a medical inspector, who, on boarding the vessel, fell when attempting to step or jump from the lumber pile to the deck.

Appeal from the District Court of the United States for the District and Territory of Hawaii; Horace W. Vaughan, Judge.

Suit in admiralty by William F. James against the British steamship Coolgardie; H. A. Thompson, master and claimant. Decree for libelant, and claimant appeals. Reversed.

This is an appeal from a decree for damages in favor of appellee for personal injuries sustained while boarding a vessel to make a medical inspection. Dr. James, appellee, was a physician 57 years old, employed by the government to make medical inspection of vessels entering the harbor of Honolulu, and for years had been accustomed to boarding ships to make medical examinations. On the morning of August 12, 1917, in pursuing his official duties, he was taken in a launch to where the Coolgardie, a freight ship, lay in calm water waiting to enter the harbor. The ship was loaded with lum-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ber, which was lashed to the deck. The doctor, after climbing up the Jacob's ladder and over the ship's rail, stepped on a cocoa mat about 18 by 24 inches, which was lying on top of the pile of lumber upon the deck of the ship; the edge of the mat being parallel with the edge of the lumber. The top of the lumber was a little less than 2 feet below the deck rail, and about 2 feet 9 inches above the deck. The doctor stepped over the rail onto the mat, and then stooped to get down or to jump to the deck, when the mat probably slipped, and the doctor fell almost head first, and struck and injured his right knee. The mat was wet, and the deck was damp from recent washing down.

Alexander G. M. Robertson, Clarence H. Olson, and Marshall B. Henshaw, all of Honolulu, T. H. (S. H. Derby, of San Francisco, Cal., of counsel), for appellants.

Frank E. Thompson, John W. Cathcart, and R. A. Vitousek, all of Honolulu, T. H. (Grant H. Smith, of San Francisco, Cal., of counsel), for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). Whether or not the mat slipped at the instant the doctor moved to step from it to the deck is not certain. Some witnesses said that it did slip a little, while others said it did not. We are inclined to believe that it did. The District Court, however, was of the opinion that the point was immaterial, and that the vessel could not be held liable if there were nothing in the case but the slipping of the mat, and rested decision upon the ground that the ship was negligent, in that "the exercise of ordinary care would have provided something for him [the doctor] to step down upon from the lumber pile where he got off the Jacob's ladder." We agree that the question is narrowed to this: It being perfectly evident that the doctor was in no danger until he was in the act of getting down from the mat to the deck, can negligence be attributed to the ship in failing to provide something for him to use in getting from the top of the lumber to the deck?

As already said, the step down was 2 feet 9 inches. The doctor saw that the deck was damp, and he knew that the mat was wet, and of course he could fairly judge the height from the lumber to the deck. Had there been any thought by him that there was the slightest danger in jumping down, naturally he would have asked for some means whereby he would have felt perfectly safe. Even a hand of one of the crew would have been enough to ease the force of the jump. But evidently he believed, as ordinarily almost any one would believe, it was perfectly safe to step or jump down. He testified that it was "an easy jump." We gather that, as his body was bent to jump, the mat slipped just enough to shift the equilibrium of the body, and that as a result he was pitched forward, and in that way fell on the knee.

But we cannot see that the ship can be held to have omitted to exercise due care. A careful reading of the whole record satisfies us that the accident was one of those unavoidable ones for which no one can be legally held responsible. The Euxinia, 150 Fed. 541, 80 C. C. A. 254.

The decree is reversed.